Our next case today, number 241233, United States v. Nelson Medina-Ortiz. Will counsel for appellant please come up and introduce yourself on the record to begin. Good morning, your honors and members of the court. This is Maria Angela Tirado-Ales. I am court-appointed attorney for Nelson Medina-Ortiz. Judge Afram, I would reserve one minute for rebuttal. You may do so. Yes, your honor. In this case, appellant was found guilty of attempted transportation with intent to engage in criminal sexual activity. As part of the defense, he requested an entrapment instruction and it was denied, although it was preserved. He also was, there were two counts in the indictment and the first count, it was attempted coercion and enticement of an individual believed to be a minor to engage in sexual activity. The controlling questions that would be in this appeal is, was the evidence on the record sufficient to raise an issue of entrapment to be put before the jury? And did appellant met the dual burden required for instruction of entrapment, which are government's improper inducement and his lack of predisposition? We believe that both should be answered in the affirmative, your honor. Can I focus on sort of the government conduct and just so I understand the facts. After, so the Craigslist ad goes up, the defendant responds to it and that very first interaction, it becomes clear from what the, from what the undercover tells the defendant that the victim is, or there was no actual victim, but in the sting that the hypothetical victim is 14 years old and he says, I don't date minors. And then it stops or he stops, they stop. And then he re-initiates contacts thereafter. That's, that's his choice. And then I guess my question is, as I understood the record is, is before really anything else happens, is that when he sends to this hypothetical victim, the picture of the scantily dressed woman on the bed? Is that right? Yes. He sent one pictures of himself and. That before they actually get into discussing plans where he says, we'll go to the beach or a ride. Is the picture of the woman the first thing after sort of the back and forth about hello again? I understand that that's so in the record, your honor. And there was another picture that he requested from her and that was sent from the agent to, to, to him. Your honor, we, we believe that the, the appellant has to, to meet a modest burden of production of some evidence of, of improper inducement. And I, I do believe that that was the case. One point, important point that I want to, to bring forth to the court is that in this case, we don't have an actual transcript of what transpired in the charging document when the parties were supposed to do the final argument regarding the, the entrapment issue. But we can infer that, that the modest burden was produced or completed because the jury in this case found a defendant not guilty. Of the first count, your honor. So, we believe that. Was he acquitted on count one or was a hung jury? No, acquitted. Okay. Acquitted. And, and we, we do believe that there was the plus factor which the government is contesting that did not happen. This, this is a case. What specific facts are you pointing to that you say show inducement? Okay. First, it's important to have the time frame here, your honor. It's a short span of time from March 20 to March 28 where the conversations take place. But during the first days, the conversations are very slow and they start taking more heat or more. What specific facts are you pointing to as far as governmental conduct? Okay. It, it is, I would, I say that it is important to look particularly in the cross-examination and the way the, the, the exchange of communication is going. And every time the, Mr. Medina tells her, she, this Alesh Minor asks, what can we do? And he said, well, we can go to the movies. What else? We can go to the beach. What else? And. That's why I asked my first question. But that follows the sending of the, of the scantily clad woman on the bed by your client. So all of that is after that. So I guess my thinking is that is a sexually charged image that is sent immediately after he initiates contact. And so the, the point of the sting is to figure out what does this guy mean? They never offer, they never offer sex. He does. It does take a while, but it's just questions. And if there were no scantily clad woman, and he says, I just want to go for a ride, and that were the end of it, I follow you. But it starts with this sexually charged thing. And it seems like it's rational for the government to ask questions, to try to take that to the end point, to figure out what is this really all about? Well, really, if the, if the judge, if the court reads the records and review the records, the way it goes, it, he never speaks about sex per se. And she is the one going into him and I want a mature man. I want to have more fun. I'm looking for fun. And, and he, he stopped shorts. He stopped short of going into any sexual innuendo up to the, up to the very end. Excuse me? The emojis. There are some emojis from both parts, but then those are interpretations of the agent of what the emojis are, are stating. So, so there is an active role from the government putting some sense and some sexual sense into all these back and forth conversation between this minor and Mr. Medina. And they're arousing. The, the agent starts building up, building up the conversation and arousing to the, to a point that even the- Is there a non-sexual explanation for the image that was sent right at the beginning of the interaction? What is, do you have a non-sexual explanation for sending a hypothetical 14-year-old a picture of a scantily clad woman laid out on a bed? Well, if, if you see the photograph, it's, it's not a, it's not a nude picture, but it perhaps may be some provocative. It prominently features the, whoever that is, her rear end. Excuse me? It prominently, in that photograph, it prominently features that person's rear end. Uh, yes, it does, Your Honor. And I cannot say it's not a, a, a picture that can be taken in a sexual context. But, uh, this, the conversation and this, uh, um, conversation that it's, uh, going on with the, with, uh, uh, Alesh Minor, it's built up. And Medina never, beside that picture- Our case law says that you can give the, it is not government overreach to provide the defendant with the opportunity to commit the crime. And so the problem I have with your argument is, I think you've basically agreed, it starts from something that appears sexual. And while, yes, the, the conversations are, do you want to do more? Do you want to do more? It's not offered what the more should be. That is eventually provided by him. So it is an attempt to give him opportunity, but not based out of nothing, based on his initial action. But, uh, but I do believe that there is, that the way, and particularly when the, uh, court reviews the cross-examination, uh, it will see that there is this plus factor. Judge Hamilton has a question. Counsel, could I just ask you, as you know, there's, there are a lot of these cases, a lot of reported appellate cases. What do you think is your best case for saying that this evidence was sufficient to require an instruction? Well, Your Honor, one, my, my best case would be, um, the, the case of, uh, uh, Gamache, Your Honor. Gamache? Thank you. Mm-hmm. Thank you, Counsel. Thank you, Counsel. Will Attorney for Appellee please come up and introduce yourself on the record to begin? Good morning, Your Honors. May it please the Court, Julia McIgnatis for the United States. Now here, the District Court properly determined that Mr. Medina failed to meet his entry-level burden needed to trigger an entrapment instruction. As this Court is well aware, the first step in the entrapment instruction analysis is to see whether there was any improper governmental overreaching. And this Court has explained that overreaching is conduct that would cause a person that's not otherwise predisposed to do so to commit the criminal act. And it's given a list of examples to include threats, intimidation, dogged insistence, and excessive pressure. Now, Medina did not meet his burden because nothing the government did in this case can be said to lure him in. I think they would say it is dogged, dogged insistence or whatever you just said, when he, they start to actually make plans. And his plans are, let's go for a movie, let's go for a ride, let's see the beach, some version of something like that. And the answer might be, okay. But no, the answer was, well, something like, I'm looking for more fun. And so there's a line there somewhere where at some point, it's dogged insistence or it's not. So why isn't that? Okay, Your Honor. And I think what this Court has done in its previous jurisprudence, it's given an analogy that I think is really useful in this case. Now, we know that sting operations in and of themselves don't constitute entrapment because they merely give the defendant an opportunity to commit the crime. And what I would say is a textbook or a normal sting operation is where from the get-go, you are offering, would you like to buy some drugs? Would you like to help me protect a drug transaction? This case is different because from the get-go, it's just an offer to potentially chat with an individual who's bored. The solicitation or the Craig list posting in and of itself made no reference of sex. So from the get-go, we don't have that government clearing the path. And this is where the analogy comes in. Excuse me, Your Honor. About the image at the beginning that we talked a lot about with your friend that you sent, if you didn't have that, and she says, I'm bored, I'd like to go have some fun, and he offers the things I already said, would it be problematic if the government then says, well, what more could we do? Well, Your Honor, I think if I can get back to the analogy. So if a sting operation clears a path, it crosses over into entrapment when the government's conduct would push the defendant down that path. And in this case, I know Your Honor said, let's put aside the image, but obviously that's something that we can't ignore in this case. But I would still respectfully push back on that example because what the government is doing, even by saying maybe there's more, is opening up the path to sexual criminal activity because it hadn't been explicit to that point. So, but if even we were to suggest that, oh, Sullivans, I want more, I'm looking for something different, can be seen as insinuating or suggesting sex, that gets us to point one, to clearing a path with no excessive pushing. But in this case, we have something else, which is the photograph. And then within the first ten minutes of moving the chats from Craiglist to the text, we not only have a provocative photograph of a female with her face turned exposing her buttocks, but we also have Medina now sending a picture of himself without a shirt. So another way this court has explained what Sting Operations v. Entrapment has been is taking a defendant who was on a righteous path to a criminal one. And respectfully, when we have this picture, and he knows it's a 14-year-old, a purported 14-year-old, and he sends a picture of a woman scantily clad and then a picture of himself without a shirt on, it cannot be said that he was on this righteous path. And what do we know? We know that Mr. Medina initiated the conversation. Granted, there was a post on Craiglist, but he initiated the conversation. And after the agent said that I'm a 14-year-old girl, he continued constantly over four days to be the initiator of the conversation. And then on text, he started with the provocative photographs. And then once he mentioned a motel room, a jacuzzi filled with bubbles where she didn't necessarily have to bring a bathing suit, it just spiraled downhill. And it wasn't that the government pushed him down this path. When she said, are we really going to do this? He said, you don't have to ask me twice. So you have an individual who was readily willing to go down the path. He asked her about her fantasies, used emojis, and was very explicit when he made reference to genital size and oral sex. And this all came from the defendant himself, not from the agent posing as a 14-year-old girl. Again, it's the government's contention. The ad never mentioned sex, and the idea of sex never came from the government. So we're missing that plus one factor. I'm going to change positions, just analytically, how you think about that. So he answers an ad that is, I think it's W4M, like women for men. So that's not indicative of anything. Then the first conversation when the 14-year-old fact is revealed, he says, I don't date minors. Then he reinitiates, and we've gone over what happened. So as you're supposed to think about predisposition, what do we mean by that? And I mean, predisposed when? What is the point of time that we should ask whether there was evidence of his lack of predisposition? Your Honor, I believe the case law just says the evidence that's available at that time. So that would be the evidence we had at trial. And certainly, the self-serving statement of, I don't go out with minors, only to then two hours later, continue the conversation, and then we all know what happened afterwards, clearly would be relevant in the predisposition inquiry. But there's one thing, we don't get to that inquiry unless we find the improper governmental overreaching. But Judge Basosa found both, correct? Judge Basosa stated that he found both. And because this was preserved, this court is viewing this de novo. So if this court doesn't even want to get to section two because he has not fulfilled his burden for part one, then that would become moot. And to circle back to Judge Hamilton's question of appellant's counsel, Gamache is distinguishable. All of the cases that have been cited by Mr. Perez, excuse me, by Mr. Medina, including Perez, Rodriguez, Hinkle, and Gamache, those two cases that deal with undercover operations, are distinguishable because in those two cases, the government used a tactic that this court has referred to as bundling. So the initial advertisement or the government offer has included both licit and illicit sex. So they're bundling the idea of something legal with something illegal. So that first approach by the defendant, it's unclear whether they were drawn to the legal sex or the illegal sex. And that's been found to be a plus one factor. But in those cases, there's a second factor, which is also adults normalizing and even discussing downplaying the harm by portraying sex with minors as something beneficial or normal. And those cases, the Perez, Rodriguez, the Hinkle, and the Gamache line of cases, found those to be two plus factors that are simply non-existent in this case. So any reliance on those cases, they're just factually different and they would not provide him with the argument that he would need. So counsel, I mean, I think that our case law describes this entrapment defense as requiring a minimal burden, and I'm still struggling to try to figure out why the government's continuous requests to, you know, I want more, I want more. Why wouldn't that satisfy that minimal burden? Your Honor, because of the case law, and I can point you to Davila Nieves, states that even multiple and persistent solicitations or a very, very motivated buyer in the case of drugs, in and of itself is not entrapment when you're merely clearing the way. Nothing the government said can be said to have pushed defendant down the path. Now, after sex was on the table, if he had said, oh, I don't want to do this, and then you have the government, come on, it's going to be fine, where you could have the idea that once sex was on the table, there was some sort of hesitancy to the extent that he didn't want to do it, then you might look at answers differently, and this is why context matters. But in this case, it was the defendant that put the sex on the table, the defendant that said that you don't have to ask me twice, and any bouts of reluctance that may have been shown, because at one time he even says, how do I know you're not a cop? The interesting operative inquiry here is not that the government said anything to assuage his fears and to say, let's proceed. The context was, you're weird. Oh, you're just a curious girl, and I could understand this. You can almost see, you know, the cartoon where you have an angel on one side and the devil on the other side, and from the chats, you can almost see that it's him that's rationalizing why this is okay. He even mentions there's some sort of divine intervention at some point where he seeks forgiveness from God, but at the same time, he knows that God brought this minor into his life. So it's nothing the government says that is pushing him or encouraging him to do it, if I may finish my thoughts, Your Honor. It's Mr. Medina himself who is just seeing an agent who's merely clearing the way with nothing more, who chooses to go down that road himself. Thank you, counsel. Thank you. Thank you, counsel. Attorney Tirado-Valles, you have one minute for rebuttal. Yes, Your Honor. I would like to stress out that if both parties, and I think that in this case, both parties adduce some compelling inferences, and I believe that in the case of Nelson Medina Ortiz, he did, and he had a minimal burden of producing this evidence, then, of producing some evidence, then the court should have viewed in, or drawn all the reasonable inferences in his favor, and he should have allowed the court, the jury, to receive the entrapment defense, and the jury would have ultimately decided. In this case, we stress that we believe that it was met, and that in this case, the jury could have viewed that my client wasn't trapped, and we request that this case be reversed. Thank you. That concludes arguments in this case.